**NICHOLSON v. HOUSTON ELECTRIC CO.**
**(No. 7797.)**

(Court of Civil Appeals of Texas. Galveston. Jan. 19, 1920. On Motion for Rehearing, Feb. 21, 1920.)

**I. Master and servant ⊸301(1)—Automobile owner not liable for negligence of one neither employed nor authorized to drive, and driving without owner's knowledge.**

The owner of an automobile, which was being driven by one not employed or authorized by the owner to drive it, but to carry passengers as an individual enterprise of the driver, without the owner's knowledge, is not liable for injuries to a passenger resulting from the driver's negligence.

**2. Street railroads ⊸114(10)—Evidence held not to show negligent speed.**

In an action for injuries to an automobile passenger, crushed between two street cars when the automobile attempted to pass the one going in the same direction on the left, plaintiff's evidence *held* not to sustain allegations of violation of street car company's rules as to speed of meeting cars, or that cars were negligently operated at dangerous speed.

**3. Street railroads ⊸117(10)—Evidence of want of lookout insufficient for jury.**

Plaintiff's testimony that the automobile in which he was riding was in plain sight of the motorman of an approaching street car, and that the car did not slacken speed, but that he did not know whether the motorman was looking toward the automobile, *held* insufficient to take to the jury the issue of the motorman's failure to keep a proper lookout.

**4. Street railroads ⊸117(35) — Evidence of discovered peril insufficient for jury.**

In an action for injuries to a passenger in an automobile caught between two meeting street cars, evidence that the automobile was passing the car going in the same direction on the left where the motorman would not expect it to be, and that only a few seconds elapsed between the time the motorman of the meeting car could have seen the automobile's peril and the accident, *held* not sufficient to take to the jury the issue of the motorman's negligence after discovering plaintiff's peril.

**5. Negligence ⊸83—Discovered peril involves actual knowledge of peril.**

Before the doctrine of negligence after discovered peril can apply, it must be shown that the person alleged to have been negligent actually discovered the peril.

On Motion for Rehearing.

**6. Evidence ⊸474(9)—Plaintiff, though nonexpert, may testify as to distance within which car could be stopped.**

Testimony by plaintiff that the street cars at the speed they were traveling could have stopped within a distance of 20 feet was admissible, over the objection that witness had not qualified as an expert.

**7. Appeal and error ⊸1056(1)—Exclusion of opinion as to stopping of street car held immaterial.**

Where there was no evidence to sustain the allegations of negligence in operating street cars at too great a rate of speed and in failing to act after discovery of peril, the exclusion of plaintiff's testimony, as to the distance within which the cars could have stopped, was immaterial.

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by O. H. Nicholson against the Houston Electric Company and another. Judgment for defendants on directed verdict, and plaintiff appeals. Affirmed.

Charles Murphy, of Houston, for appellant. Baker, Botts, Parker & Garwood, R. S. Cosby, R. C. Patterson, and Love Wagner & Wagner, all of Houston, for appellees.

GRAVES, J. The action here was one for damages for personal injuries alleged to have been sustained by O. H. Nicholson while a passenger in a Ford automobile, or jitney, as a result of the machine's being caught

and crushed—and himself along with it—between two oppositely moving street cars, owned and operated by the Houston Electric Company on Washington avenue in the city of Houston.

Nicholson sought joint and several recovery against both the electric company and A. Mintz, the owner of the automobile, charging that Washington avenue at that point within the city extended practically east and west, that the street cars were running on double or parallel tracks, the outbound one going west, the inbound· one east, the automobile being behind the outbound car and likewise west bound; that, when the automobile from the rear overtook the outgoing street car, the driver (an agent of A. Mintz whose name, though not given, was later proven to be Willie Loesser), who had exclusive control over the operation of the machine, attempted to pass from the traffic-crowded right or north side of the avenue around the outbound street car upon the left or south side thereof; that the two street cars (going in opposite directions) were then in close proximity to each other, were moving at a rapid rate of speed, and, the driver of the automobile being unable to cross over and use the south side of the avenue because of its being congested with other vehicles, continued his attempt to so pass the outbound street car, and was caught between the front ends of both cars, with the consequences stated.

Giving the petition the benefit of every reasonable intendment in that respect, the effect of the averments concerning negligence as to both defendants may be thus stated:

The driver of the automobile was not charged with being guilty of any particular act of negligence, it being merely recited that he attempted to pass around the outgoing car in the above-stated manner, and that he ,and his principal, the owner of the machine, "failed to use and exercise that high degree of care that they as a common carrier of passengers for hire are required to exercise, under the circumstances, toward plaintiff."

The electric company was said to be remiss in that: (1) The operators of its two street cars did not use the means at hand to prevent injury to plaintiff after discovery of his peril; (2) the motorman of the inbound car failed to keep a proper lookout; (3) both cars were operated at an excessive and dangerous rate of speed; (4) the rules of the company with reference to .slackening of speed in the meeting and passing of street cars on its lines were not observed.

At the close of the evidence for plaintiff the court sustained the electric company's motion for an instructed verdict in its favor, but at that stage denied a like request from the defendant A. Mintz, requiring him to present evidence in his defense; after that had

been done, however, the court of its own motion instructed a verdict in his favor also.

Judgment that plaintiff take nothing against either defendant having been accordingly entered, he prosecutes this appeal.

Only three assignments of error are presented: (1) The instructed verdict for the electric company should not have been given, because the question as to whether or not it was negligent was one of fact for the jury. (2) "The court erred in peremptorily instructing the jury to find and return its verdict in favor of the defendant A. Mintz, for the reason that plaintiff was a passenger in the automobile owned by the defendant Mintz, and operated by its servant, and said automobile so operated constituted and was a common carrier of passengers for hire, and said question was one of fact for the jury." (3) The plaintiff should have been permitted to testify as to the distance within which the outbound street car could have been stopped in the circumstances under which it was being operated just prior to the collision, he having first stated that he was able to give the distance.

[1] As will be· noted, the second assignment, which has been here copied in-full, is the only one attempting complaint against the judgment in favor of appellee Mintz. While we fully agree with him that it is not such a compliance with the rules of this court as to entitle it to consideration, it could not be sustained if it were considered, for the reason that the undisputed evidence showed that Mintz was not driving the automobile at the time appellant was injured, was not even present, and that the driver, one Willie Loesser, was neither employed nor authorized by Mintz to drive it, but in doing so was engaged at the time in an individual enterprise of his own, without the consent or knowledge of the owner. Under such proof, Mintz could not be ·held liable, and the court did not err in so telling the jury. Hill v. Staats, 187 S. W. 1039; Id., 189 S. W. 85, and cited authorities, writ of error refused 202 S. W. XVI; Harknett v. Gryzmish, 218 Mass. 258, 105 N. E. 988; Healey v. Cockrill, 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115

But was there error in also taking the cause from the jury in so far as it affected the electric company?

We conclude not, upon considerations arising out of the undisputed proof, mainly these:

[2] The distance between the parallel tracks was not sufficient for an automobile to pass between the two street cars, the clearance space being less than two feet, and, in attempting to pass around the outgoing one from the left side in the manner alleged, it was caught and crushed between their front ends when the two cars reached the place in the street where they would otherwise have

passed each other; there is not a word of testimony tending to show that the company had any rules about the speed at which passing street cars were to be operated, and of course none that either motorman violated any such rules. The allegation touching this matter therefore found no support in the testimony.

Concerning the speed of the cars, the only testimony offered was that of the appellant himself, Mr. Nicholson, who said that the outbound car at the time the automobile in which he was a passenger reached its front end was moving about 25 miles an hour, the inbound one being then about 100 yards or 300 feet away, and that the outbound car and the automobile ran along together for that distance at about the same speed, the automobile getting slower and the street car faster, if there was any change at all in the speed of either from the time they came abreast until the collision. This eliminates the speed of the outgoing car as a proximate cause of the accident, since it is apparent that the automobile—moving at the same or a slower rate of speed—neither did nor could have passed ahead of or gotten in its way, and there is nothing whatever indicating that a speed of 25 miles an hour was either in itself dangerous, or in violation of a city ordinance. No ordinances of any kind were even pleaded. When it came to the inbound car, he nowhere said what its speed was, nor anything from which that important fact might have been inferred, merely stating:

"The inbound street car was continuing its movements; it did not stop at any time before the accident."

And again:

"The motorman of the inbound car did not stop his car at any time before the collision, and, if he slackened his speed, I couldn't tell it."

This testimony lays no predicate for even a guess or estimate as to the speed of the incoming car, the limit of justifiable deduction therefrom being that it was moving; it is accordingly obvious that the proof likewise failed to establish any causal connection between the speed of that car, whatever it may have been, and the accident.

[3] Did the motorman of this inbound car fail to keep a proper lookout, as was charged? The appellant answers this inquiry also by furnishing the only testimony touching the matter, when he says:

"There was nothing between the Ford car in which I was riding and the motorman of the inbound car that would have obstructed his view of the car in which I was riding. Neither was there anything between the car in which I was riding and the motorman of the inbound car when we reached the front end of the outbound car to prevent his seeing it. * * * I do know that the motorman of the inbound car was looking in my direction."

It thus unequivocally appears that no dereliction in that respect was established.

[4] There but remains the rather vaguely averred issue of discovered peril. That, if applicable at all, must necessarily be referable to the conduct of the motorman of the inbound car alone, because the appellant—after founding his entire case upon the fact that the automobile he was riding in came up on the wrong side of the outbound car, thereby placing it where the motorman of that car had no reason to suspect that it would be—wholly failed to show that the outgoing motorman in fact either saw or knew it was there.

Turning, then, to the situation as affecting the operator of the other car, we are not only in darkness as to the rate of its movement during the whole of the critical time, but are told by the only witness on the point, the appellant himself again:

"So that from the time the jitney popped around there back of this outbound street car until that time (time of the collision) it was just like that (snaps his fingers). It was just a few seconds; not very long."

And again:

"From the time he whipped around the back of it (outbound street car), until the collision occurred, was just a few seconds."

Since there obviously could have been no position of peril at all until the automobile dashed around the rear of the outgoing car and so came first upon the track of the incoming one, this testimony not only falls short of indicating negligence on the part of the latter car's operator in not using any means at hand to prevent the injury of appellant after becoming aware of his perilous position, but strongly tends to induce, if indeed it does not actually compel, the conclusion that the duration of the period of peril was too short for the motorman to have successfully done anything toward avoidance of the collision; and this without taking into consideration the unknown speed of his car, the equally undisclosed nature and extent of the means he had at hand for stopping or slowing it up, and the lack of any evidence showing within what distance it could have been stopped. Appellant, it is true, offered upon the trial to testify to this distance with reference to both cars, but the court declined to admit it, and while specifically complaining here through his third assignment of that refusal as touching the outbound car, which we have held to be an immaterial inquiry, he fails to assign error upon it as applying to the ingoing one; the resulting effect here, therefore, is the same as if no effort to make the showing had been proffered below.

[5] So that, considering the evidence as a whole, even if there should be thought to be doubt as to its potentialities in other re-

spects, it seems clear that the motorman of the inbound car was not shown to have discovered, or to have had actual knowledge of the peril of appellant in time to have avoided the injury by the use of the means and agencies then at hand; this by all the authorities is accepted as an essential element of the doctrine invoked. T. & P. Railway Co. v. Breadow, 90 Tex. 32, 36 S. W. 410; San Antonio & Aransas Pass Ry. Co. v. McMillan, 100 Tex. 564, 102 S. W. 103; G., H. & H. R. R. Co. v. Sloman, 195 S. W. at pages 323 and 324, paragraphs 5 and 6, and cited authorities.

Under these conclusions, the developed facts of the case having failed to show that negligence on the part of either defendant in any respect alleged was a proximate cause of the accident and injury, all assignments are overruled, and the judgment affirmed.

Affirmed.

#### On Motion for Rehearing.

Upon original consideration, through some inadvertence, appellant's fourth assignment, complaining of the exclusion of his proffered testimony as to the distance within which the inbound car could have been stopped, was overlooked; as a consequence, it was stated in the opinion that no such complaint appeared, and disposition of the cause was made upon that assumption.

On rehearing, however, that assignment duly presenting the matter has been called to our attention, and has been carefully considered.

[6] As the bill of exceptions on which it rested discloses, the appellant, although saying nothing about the speed of this car, except that it did not stop before the accident nor (so far as he could tell) slow up, offered to state that both street cars, at the speed they were then traveling, could have been stopped within a distance of 20 feet, and, if that had been done, a space of at least 100 feet would have been left between them before meeting.

The only objection made to this tendered testimony, and which the court sustained, was the witness had not qualified as an expert as to the distance within which the cars could have been stopped, and was therefore not capable of giving that kind of evidence.

[7] We think the testimony was admissible over the particular objection urged, but are further of opinion that, had it been admitted, it would have become immaterial and been left without probative force, since it is evident the witness' opinion was based upon and had reference to the rate of speed alone, he not pretending to know anything whatever about the operation of a street car, nor anything as to the condition of the brakes or other appliances available upon the car in question, nor was there at any time during the trial an offer to make proof otherwise as to these matters.

In all other respects, too, the motion has had our careful consideration; but, under the conclusion that no error was committed in the former decision it is overruled.

Overruled.